## IN THE COURT OF COMMON PLEAS
### SUMMIT COUNTY
### STATE OF OHIO

| | |
|---|---|
| **CASSIANNA BELL,** **Administrator of the Estate of Diane Denise Bell,** 803 Rocky Brook Drive, Apt. C Akron, Ohio 44313,  Plaintiff,  -vs.-  **INNER PEACE EVER LIGHT HOME CARE LLC,** an Ohio limited liability company, c/o Jeanette Ruffin, its Statutory Agent, 345 West Avenue Tallmadge, Ohio 44278,  and  **ESSENTIAL HOUSING LLC,** an Ohio limited liability company, c/o Jeanette Ruffin, its Statutory Agent 1342 Easton Drive Akron, Ohio 44310,  and  **ESSENTIALS NOW LLC,** c/o United States Corporation Agents, Inc., its Statutory Agent 6605 Grand Montecito Parkway, Suite 100 Las Vegas, Nevada 89149,  and  **JEANETTE RUFFIN** 345 West Avenue Tallmadge, Ohio 44278  and | Case No. _____  Judge: _____  **COMPLAINT FOR SURVIVAL CLAIM AND WRONGFUL DEATH:**  1. Negligence [Premises Liability]  2. Negligent Hiring, Supervision and Training  3. Civil Rights Violation, 42 U.S.C. §1983  4. Negligence, R.C. Chapter 2744  5. Assault and Battery  <u>EXHIBIT 1</u>  <u>JURY DEMAND ENDORSED HEREON</u> |

-1-

**EXHIBIT A**

| | |
|---|---|
| **LASHON WILSON**<br>1201 Neptune Street<br>Akron, Ohio 44301, | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **JAREL WOODEN**<br>Inmate No.146181<br>Summit County Jail<br>205 E. Crosier Street<br>Akron, Ohio 44311, | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO**<br>2355 Second Street<br>Cuyahoga Falls, Ohio 44221 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **UNKNOWN EMPLOYEES OF DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO**<br>Unknown Address, | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL AGENCIES 1-10 and DOE ENTITIES 1-10,** | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

Now comes, CASSIANNA BELL, Administrator of the Estate of Diane Denise Bell, Plaintiff herein, by and through her attorneys, Robert C. Meeker, of Blakemore, Meeker & Bowler Co., L.P.A., and Blaise R. Meeker, of Meeker Legal, LLC, and hereby complains against INNER PEACE

-2-

EVER LIGHT HOME CARE LLC, ESSENTIAL HOUSING LLC, ESSENTIALS NOW LLC, JEANETTE RUFFIN, LASHON WILSON, JAREL WOODEN, DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO, UNKNOWN EMPLOYEES OF DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL AGENCIES 1-10 AND DOE ENTITIES 1-10, names unknown, collectively as Defendants herein, as follows:

A.  PARTIES

1.  During all relevant times herein, Diane Denise Bell, Decedent herein, was a 56-year old individual, residing in Summit County, Ohio, at 1709 Shaw Avenue, Akron, Ohio 44305, and died at said residence on November 15, 2024.

2.  During all relevant times herein, on October 22, 2025, CASSIANNA BELL, Decedent's next of kin and a resident of the Summit County, Ohio, whose address is 803 Rocky Brook Drive, Apt. C, Akron, Ohio 44313, was appointed as the Administrator of the Estate of Diane Denise Bell. (See Letter of Authority, attached as Exhibit 1 )

3.  During all relevant times herein, Defendant INNER PEACE EVER LIGHT HOME CARE LLC ("INPEL"), doing business as INPEL, was, and is, an Ohio limited liability company, whose address is 345 West Avenue Tallmadge, Ohio 44278.

4.  During all relevant times herein, Defendant ESSENTIAL HOUSING LLC ("Essential Housing") was, and is, an Ohio limited liability company, whose address is 1342 Easton Drive, Akron, Ohio 44310.

5.  During all relevant times herein, Defendant ESSENTIALS NOW LLC ("Essentials Now") was, and is, a Nevada limited liability company, whose address is 10481 Saddle Mountain

-3-

Street, Las Vegas, Nevada, 89178.

6. During all relevant times herein, Defendant JEANETTE RUFFIN ("Ruffin") was, and is, a resident of Summit County, Ohio, whose address is 345 West Avenue Tallmadge, Ohio 44278.

7. During all relevant times herein, Defendant LASHON WILSON ("Wilson"), LaShon Denise Wilson, was, and is, a resident of Summit County, Ohio, whose address is 1201 Neptune St., Akron, Ohio 44301.

8. During all relevant times herein, Defendant JAREL WOODEN ("Wooden"), also known as Jarel M. Wooden, was, and is, a resident of Summit County, Ohio, and is currently incarcerated in the Summit County Jail, Inmate No. 146181, located at 205 E. Crosier St., Akron, Ohio 44311.

9. During all relevant times herein, Defendant DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO ("Summit DD") was, and is, a Summit County, Ohio governmental entity, whose address is 2355 Second Street, Cuyahoga Falls, Ohio 44221.

10. During all relevant times herein, Defendant UNKNOWN EMPLOYEES OF DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO ("Unknown Employees") were, and are, employees of Defendant Summit DD, whose addresses are unknown.

11. Plaintiff brings this action against Defendants Summit DD and Unknown Employees and agents of Summit DD, pursuant to Chapter 2744 of the Ohio Revised Code (R.C.).

12. During all relevant times herein, Defendant Does were, and are, individuals, persons, corporations, partnerships, governmental agencies and entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff(s), or his/her/its/their attorney(s), and could not discover said names who in some manner may be liable to Plaintiff(s), contractually,

-4-

vicariously, tortiously, jointly and/or severally. Plaintiff(s) will be obtaining updated reports, as to identity, liability, existence of additional claims and/or causes of action or otherwise, in connection with or in addition to the claim or claims herein. Plaintiff(s) reserve(s) the right to plead Defendant Does as party defendant(s) and/or plead additional claim(s) to this action once their identities, capacities, activities, liabilities and claims or causes of action become known.

B. PRELIMINARY STATEMENT

13. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

14. During all relevant times herein, all transactions and occurrences occurred in Summit County, Ohio.

15. During all relevant times herein, Defendant INPEL maintained and operated a shared living caregiver and resident home business, located at 1709 Shaw Avenue, Akron, Ohio 44305 ("Shared Living Facility").

16. During all relevant times herein, Defendant Essential Housing owned and/or had an interest in the Shared Living Facility and the services provided in said Share Living Facility.

17. During all relevant times herein, Defendant Essentials Now owned and/or had an interest in the Shared Living Facility and the services provided in said Shared Living Facility.

18. During all relevant times herein, Defendant Ruffin owned and/or had an interest in Defendants INPEL, Essential Housing and Essentials Now, including, but not limited to, as a member, managing member, director, officer, representative, agent and/or employee, and the Shared Living Facility and the services provided in said Shared Living Facility.

19. During all relevant times herein, Defendant Wilson owned and/or had an interest in

-5-

Defendants INPEL, Essential Housing and Essentials Now, including, but not limited to, as a member, managing member, director, officer, representative, agent and/or employee, and the Shared Living Facility and the services provided in said Shared Living Facility.

20. Upon information or belief, Defendants INPEL, Essential Housing, Essentials Now, Ruffin and/or Wilson were in the business of home and health care services, providing health care and housing to individuals with mental impairments and developmental disabilities.

21. During all relevant times herein, Defendant Wooden was, and is, an individual with mental impairment and developmental disability.

22. During all relevant times herein, Defendant Summit DD was, and is, a political subdivision and a Service and Support Administrator that develops Individual Service Plans for individuals, such as Defendant Wooden, who are in home and health care facilities, such as the Shared Living Facility owned, maintained and/or operated by Defendant Caregivers.

23. Upon information or belief, Defendant Summit DD and its employees and agents investigate home and health care facilities, such as the Shared Living Facility, for the purpose of placing individuals with mental impairments and developmental disabilities in home and health care facilities.

24. Upon information or belief, Defendant Summit DD certified Defendant Caregivers and Defendant Caregivers' Shared Living Facility, allowing individuals with mental impairments and developmental disabilities to be placed in said Shared Living Facility.

25. During all relevant times herein, Defendant Wooden was placed in Defendant Caregivers' Shared Living Facility as a resident, where he received home care and treatment provided by Defendant Caregivers.

26.     Upon information or belief, Defendant Summit DD and its employees and agents, with the cooperation and participation of Defendant Caregivers, developed an Individual Service Plan ("ISP") for Defendant Wooden to be administered by Defendant Caregivers and under the guidance, monitor and oversight of Defendant Summit DD and its employees and agents.

27.     Further, upon information or belief, as part of developing the ISP, Defendants, collectively, in concert, participation and cooperation, investigated and examined Defendant Wooden's medical condition, including his history and predispositions, prior to being placed at the Shared Living Facility.

28.     In August 2024, Defendant Caregivers engaged the services of Decedent as a home and care service provider at Defendant Caregivers' Shared Living Facility.

29.     Among Defendants' duties and responsibilities were, as follows (a non-exhaustive list):

a.  Perform a background check on Defendant Wooden's history.

b.  Perform a background check on Decedent's history.

c.  Provide proper training of home and care service providers, such as Decedent.

d.  Designate a responsible person(s) to evaluate and assess violence incidents, near misses, and trends.

e.  Develop and implement manuals, policies and safety guidelines for home and care service providers, which include the proper administration of ISPs upon mentally impaired and developmentally disabled individuals, such as Defendant Wooden.

f.  Ensure clear policies and procedures on hazard/threat assessments, controls, prevention strategies, shared living caregiver training and education and incident

-7-

reporting and investigation.

g.  Train all shared living caregivers on the program policies and procedures.

h.  Review plans annually, or more often if needed, updating it based on the findings from the review.

30.  Upon information or belief, among Decedent's duties and responsibilities at the Shared Living Facility included the following:

a.  Reside at the Shared Living Facility.

b.  Administer the ISP for Defendant Wooden, as developed by Defendants Summit DD and Caregivers.

31.  Upon information or belief, Defendant Caregivers' duties and responsibilities were, as follows:

a.  Provide Decedent room and board at the Shared Living Facility.

b.  Provide a stipend for Decedent's services.

c.  Provide proper training to Decedent, regarding care of and administration of the ISP to Defendant Wooden, including safety and violence training.

32.  On November 15, 2024, while at the Shared Living Facility with the Decedent, Defendant Wooden became agitated and in the course of that agitation, an altercation ensued between Decedent and Defendant Wooden. During that altercation, Defendant Wooden grabbed Decedent by the arm and pushed her from the kitchen sink to and against the wall.

33.  Decedent immediately called 911 requesting help, describing the events and Defendant Wooden's conduct to 911 dispatch and stating that Defendant Wooden be taken to jail.

34.  A few minutes after the 911 call, police arrived at the Shared Living Facility. The police found Decedent fatally stabbed in the neck.

D. CAUSES OF ACTION

**Count One**
**[Premises Liability]**

35. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

36. During all relevant times herein, Decedent was a business invitee of Defendant Caregivers at the Shared Living Facility.

37. During all relevant times, Defendant Caregivers required the Decedent to reside at the Shared Living Facility in rendering her services to Defendant Caregivers and Defendant Wooden as a caregiver service provider.

38. As landowners, interest holders and/or occupiers of the Shared Living Facility, Defendant Caregivers owed a legal duty and/or heightened duty of ordinary care to maintain the premises safe for its business invitees, such as Decedent, and keep them safe from harm.

39. To perform their duty of ordinary care, Defendant Caregivers were required to maintain the premises safe from violent individuals, who resided at the Shared Living Facility, including Defendant.

40. Further, Defendant Caregivers had a duty to investigate the background of such individuals, including Defendant Wooden, before placing them in the Shared Living Facility.

41. Defendant Caregivers knew that Defendant Wooden was mentally impaired and developmentally disabled.

42. Defendant Caregivers knew, or should have known, that Defendant Wooden was predisposed to violence, including violence involving the use of knives.

43. Had Defendant Caregivers properly conducted their investigation of Defendant

-9-

Wooden, such investigation would have revealed the following events, involving Defendant Wooden:

a. In April 2011, Defendant Wooden threw household items at four victims in a residence owned by one of the victims and wished everyone dead. After doing so, Defendant Wooden chased the victims out of the home with a steak knife. While outside, Defendant Wooden threw the knife at one of the victims, who was carrying another victim. Defendant was subsequently convicted in the Akron Municipal Court, Case No. 11CR03190, of Domestic Violence and Endangering Children.

b. In January 2012, the police were summoned to Defendant Wooden's residence on Fulton Street for yelling and throwing items down the stairs. Upon arrival, the police discovered Defendant Wooden with a steak knife in his throat, and thereafter Defendant wooden approached the police officers causing the use of a Taser Electronic Control Device on Defendant Wooden.

c. In December 2012, Defendant Wooden was a passenger in a vehicle owned by the victim. While in transit, he grabbed the steering wheel causing the vehicle to hit a curb. Subsequently, Defendant Wooden became violent, again, and told the victim he was going to kill her.

d. In 2007, Defendant Wooden testified at his brother's Summit County murder trial of an 18-month-old child, and when asked whether he was the one who had hurt the child he replied "Yes, I did" and "I pushed him and made him bang his head".

e. On September 24, 2024, there was an altercation with Defendant Wooden and Decedent at the Shared Living Facility causing 911 to be called and the Akron

  Police Department to respond to the Shared Living Facility.

  f. On September 26, 2024, there was an altercation with Defendant Wooden and Decedent at the Shared Living Facility causing 911 to be called and the Akron Police Department to respond to the Shared Living Facility. The responding officers informed Defendant Wooden that he would need to contact the staffing agency with complaints of staff.

  44. Defendant Caregivers knew, or should have known, that placing Defendant Wooden and requiring Decedent to reside at the Shared Living Facility, without proper safety measures, would, and, in this case, did, cause Decedent to sustain great bodily harm, which resulted in her death.

  45. As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**Count Two**
**[Negligent Hiring, Supervision and Training]**

  46. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

  47. Defendant Caregivers engaged the services of the Decedent.

  48. Defendants Wilson and/or Ruffin were owners, employees, agents and/or principals of Defendants INPEL, Essential Housing and/or Essentials Now.

  49. As part of their duties and responsibilities, Defendants Wilson and/or Ruffin engaged the services of and trained and supervised caregivers to administer ISPs and attend to the needs of mentally impaired and developmentally disabled individuals residing at the Shared Living Facility.

-11-

50. Defendant Caregivers, specifically Defendants Wilson and Ruffin, knew, or should have known, of Defendant Wooden's violent propensities and criminal history.

51. Defendant Caregivers, specifically Defendants Wilson and Ruffin, knew, or should have known, of the recent altercations between Defendant Wooden and the Decedent, requiring police intervention at the Shared Living Facility.

52. Defendant Caregivers, specifically Defendants Wilson and Ruffin, knew, or should have known, of Decedent's lack of experience, training or knowledge in rendering caregiving services and administering ISPs to mentally impaired and developmentally disabled individuals, such as Defendant Wooden.

53. Defendant Caregivers, specifically Defendants Wilson and Ruffin, knew, or should have known, that Decedent was homeless and had a history of drug use, prior to her engagement of services.

54. Defendants Wilson and/or Ruffin failed to properly train and supervise the Decedent in rendering caregiving services and administering ISP's.

55. On November 15, 2024, Defendants Wilson and/or Ruffin's failure to properly train and supervise the Decedent directly and proximately caused Decedent to suffer great bodily harm from Defendant Wooden's actions, which resulted in her death.

56. As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**Count Three**
**[Civil Rights Violation, 42 U.S.C. §1983]**

57. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding

-12-

paragraphs, as appropriate, as if fully set forth herein.

58. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

59. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

60. Defendants Summit DD, its employees and agents and Caregivers were acting under color of state law in their duties and responsibilities in developing safety guidelines and procedures for caregivers, whose services were engaged for administering ISPs to individuals who are mentally impaired and developmentally disabled.

61. While acting under color of state law, said Defendants deprived Decedent of her well-established right to be free from violence by individuals under their charge and supervision.

62. Defendants Summit DD and its employees and agents had the responsibility to determine the qualifications and fitness of Defendant Caregivers.

63. Defendants Caregivers, in turn, had the responsibility to determine the qualifications of caregivers, such as Decedent.

64. During all relevant times herein, Defendants were clothed with the authority of the state and misused that authority.

65. During all relevant times herein, Defendants Summit DD and its employees and agents were negligent in their certification of Defendant Caregivers and their Shared Living Facility.

-13-

66. During all relevant times herein, Defendants Summit DD and its employees and agents were negligent in their supervision and monitor of Defendant Caregivers in their discharges of their duties in connection with the ISP designed for Defendant Wooden.

67. Defendant Caregivers were negligent in their failure to properly supervise and provide proper training to Decedent in her administration of IPS and on safety and violence standards.

68. Such failure caused great bodily harm to Plaintiff's Decedent, when Defendant Wooden fatally stabbed Decedent in the neck, resulting in her death at the Shared Living Facility.

69. As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

## Count Four
### [Negligence, R.C. Chapter 2744]

70. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

71. Upon information or belief, Defendants Summit DD and Unknown Employees, with the cooperation of Defendant Caregivers, developed the ISP for Defendant Wooden.

72. Upon information or belief, Defendants Summit DD and Unknown Employees had the duty to oversee and monitor Defendant Caregivers in their implementation and administration of the ISP to Defendant Wooden.

73. Upon information or belief, Defendants Summit DD and Unknown Employees had the duty to develop safety guidelines and procedures, regarding the implementation and administration of the ISP to Defendant Wooden.

74. Upon information or belief, Defendants Summit DD and Unknown Employees failed to

-14-

develop said guidelines and procedures, which resulted in great bodily harm to Decedent, when Defendant Wooden fatally stabbed Decedent in the neck.

75. Further, upon information or belief, Defendant Unknown Employees failed to monitor and supervise Defendant Caregivers and Decedent in the implementation and administration of the ISP to Defendant Wooden, despite having knowledge or awareness of Defendant Wooden's violent disposition and Decedents lack of training, supervision and experience. As such, Defendant Employees' acts and omissions were with malicious purpose, in bad faith and made in a wanton or reckless manner.

76. As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

## Count Five
### [Assault and Battery]

77. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

78. Defendant Wooden threatened to cause bodily injury to Decedent, when he grabbed her arm and pushed her against the wall.

79. Decedent was in fear of said threat, causing her to call 911.

80. Defendant Wooden threatened to cause bodily injury to Decedent, when he approached her and stabbed her in the neck.

81. In committing said acts, Defendant Wooden intended to cause great bodily harm to Decedent as he pushed her against the wall, and eventually stabbing her in the neck.

82. As a result of Defendant Wooden's conduct, Plaintiff suffered damages for

-15-

Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**WHEREFORE**, Plaintiff(s) pray(s) for judgment against Defendant(s), as follows:

A. That, as to Count One, the Court grants relief and damages in favor of Plaintiff against Defendant Caregivers in excess of $25,000.00, as to each Defendant.

B. That, as to Count Two, the Court grants relief and damages in favor of Plaintiff against Defendant Caregivers in excess of $25,000.00, as to each Defendant.

C. That, as to Count Three, the Court grants relief and damages in favor of Plaintiff against Defendants Summit DD and Unknown Employees in excess of $25,000.00, as to each Defendant.

D. That, as to Count Four, the Court grants relief and damages in favor of Plaintiff against Defendants Summit DD and Unknown Employees in excess of $25,000.00, as to each Defendant.

E. That, as to Count Five, the Court grants relief and damages in favor of Plaintiff against Defendant Wooden in excess of $25,000.00.

F. The Court finds Defendants jointly or severally liable to Plaintiffs.

G. That the Court grants to Plaintiffs against Defendants punitive and/or exemplary damages for Defendants' malicious, willful and/or wanton conduct.

H. That the Court grants relief and damages in favor of Plaintiff against Defendants, interest, losses, further damages and all of Plaintiffs' court costs, expenses and reasonable attorney fees;

I. That the Court grants relief and damages as the Court deems reasonable and proper in the premises.

**Dated**: Akron, Ohio, November 14, 2025.

Respectfully submitted,

*/s/ Blaise R. Meeker*

_____
BLAISE R. MEEKER (#0093050)
MEEKER LEGAL LLC
3580 S. Arlington Rd.
Akron, Ohio 44312
Blaise@meekerlegal.com
Phone: (330) 603-8443
Fax: (234) 294-0170


*/s/ Robert C. Meeker*

_____
ROBERT C. MEEKER (#0013019)
BLAKEMORE, MEEKER & BOWLER CO, LPA
495 Portage Lakes Drive
Akron, Ohio 44319
Rcmeeker@bmblaw.com
Phone: (330) 253-3337
Fax: (330) 253-4131


Co-Counsel for Plaintiff
CASSIANNA BELL, Administrator of
the Estate of Diane Denise Bell

## JURY DEMAND ENDORSED HEREON

Now come(s), Plaintiff, by and through her undersigned counsel, and hereby demands a trial by jury of all facts and issues so triable in this action.

**Dated**: Akron, Ohio, November 14, 2025.

Respectfully submitted,

*/s/ Blaise R. Meeker*

BLAISE R. MEEKER (#0093050)
MEEKER LEGAL LLC
3580 S. Arlington Rd.
Akron, Ohio 44312
Blaise@meekerlegal.com
Phone: (330) 603-8443
Fax: (234) 294-0170

*/s/ Robert C. Meeker*

ROBERT C. MEEKER (#0013019)
BLAKEMORE, MEEKER & BOWLER CO, LPA
495 Portage Lakes Drive
Akron, Ohio 44319
Rcmeeker@bmblaw.com
Phone: (330) 253-3337
Fax: (330) 253-4131

Co-Counsel for Plaintiff
CASSIANNA BELL, Administrator of
the Estate of Diane Denise Bell

-18-

# EXHIBIT 1
## ENTRY APPOINTING FIDUCIARY:
## LETTER OF AUTHORITY
## THE ESTATE OF
## DIANE DENISE BELL
## 2025 ES 00895

# IN THE PROBATE COURT OF SUMMIT COUNTY, OHIO

IN THE MATTER OF
THE ESTATE OF

**CASE NUMBER 2025 ES 00895**

**Diane Denise Bell**

*Deceased*

## ENTRY APPOINTING FIDUCIARY; LETTERS OF AUTHORITY
(For Executors and all Administrators)

Name and Title of Fiduciary: **Cassianna Bell, Administrator**

On hearing the Application of the above fiduciary for authority to administer decedent's estate, in open Court, the Court finds that:

1. Decedent died on: **11/15/2024**;

   Domiciled in: **1709 Shaw Avenue, Akron, OH 44305**

   Choose One: ☐ Testate   ☒ Intestate

2. Choose One:  ☐ Bond is dispensed with by the Will.

   ☒ Bond is dispensed with by Court Order.

   ☐ Applicant has executed and filed an appropriate bond, which is approved by the Court.

3. Applicant is a suitable and competent person to execute the trust.

The Court, therefore, appoints applicant as such fiduciary, with the power conferred by law, to fully administer decedent's estate. This entry of appointment constitutes the fiduciary's Letters of Authority.

PROBATE COURT
COUNTY OF SUMMIT, OH
FILED
OCT 22 2025

Date: **10/22/2025**

JUDGE ELINORE MARSH STORMER

**IT IS SO ORDERED.**

*Elinore Marsh Stormer*

**JUDGE ELINORE MARSH STORMER**

## CERTIFICATION OF APPOINTMENT AND INCUMBENCY

The above document is a true copy of the original kept by me as custodian of the records of this Court. It constitutes the Appointment and Letters of Authority of the named fiduciary who is qualified and acting in such capacity.

Elinore Marsh Stormer, Probate Judge *and Ex-Officio Clerk*

( Seal )

_____
Deputy Clerk

_____
Date