IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CASSIANNA BELL, | ) | Case No. 5:25-cv-02661-JRA |
| Administrator of the Estate of | ) | |
| Diane Denise Bell, | ) | Judge:  JOHN R. ADAMS |
| 803 Rocky Brook Drive, Apt. C | ) | |
| Akron, Ohio 44313, | ) | AMENDED COMPLAINT FOR |
| | ) | SURVIVAL CLAIM AND |
| Plaintiff, | ) | WRONGFUL DEATH: |
| | ) | |
| -vs.- | ) | 1.    Negligence |
| | ) |         [Premises Liability] |
| INNER PEACE EVER LIGHT | ) | |
| HOME CARE LLC, an Ohio Limited | ) | 2.    Promissory Estoppel/Failure to |
| liability company, c/o Jeanette Ruffin, | ) |         Train and Supervise and/or |
| its Statutory Agent, | ) |         Negligent Training and |
| 345 West Avenue | ) |         Supervision |
| Tallmadge, Ohio 44278, | ) | |
| | ) | 3.    Respondeat Superior/ |
| and | ) |         Vicarious Liability |
| | ) | |
| ESSENTIAL HOUSING LLC, an Ohio | ) | 4.    R.C. Chapter 2744, Negligence |
| limited liability company, | ) | |
| c/o Jeanette Ruffin, its Statutory Agent | ) | 5.    Civil Rights Violation, |
| 1342 Easton Drive | ) | |
| Akron, Ohio 44310, | ) |         42 U.S.C. §1983, Summit DD |
| | ) | |
| and | ) | 6.    Civil Rights Violation, |
| | ) |         42 U.S.C. §1983, Caregivers |
| ESSENTIALS NOW LLC, | ) | |
| c/o United States Corporation Agents, Inc., | ) | 7.    Assault |
| its Statutory Agent | ) | |
| 6605 Grand Montecito Parkway, Suite 100 | ) | 8.    Battery |
| Las Vegas, Nevada 89149, | ) | |
| | ) | EXHIBIT 1 |
| and | ) | |
| | ) | JURY DEMAND ENDORSED HEREON |
| JEANETTE RUFFIN | ) | |
| 345 West Avenue | ) | |
| Tallmadge, Ohio 44278 | ) | |
| | ) | |

-1-

|                                                               |     |
|---------------------------------------------------------------|-----|
| and                                                           | )   |
|                                                               | )   |
| LASHON WILSON                                                 | )   |
| Unknown Address,                                              | )   |
|                                                               | )   |
| and                                                           | )   |
|                                                               | )   |
| JAREL WOODEN                                                  | )   |
| 1709 Shaw Avenue                                              | )   |
| Akron, Ohio 44305,                                            | )   |
|                                                               | )   |
| and                                                           | )   |
|                                                               | )   |
| DEVELOPMENTAL DISABILITIES                                    | )   |
| BOARD, SUMMIT COUNTY, OHIO                                    | )   |
| 2355 Second Street                                            | )   |
| Cuyahoga Falls, Ohio 44221,                                   | )   |
|                                                               | )   |
| and                                                           | )   |
|                                                               | )   |
| UNKNOWN EMPLOYEES OF                                          | )   |
| DEVELOPMENTAL DISABILITIES                                    | )   |
| BOARD, SUMMIT COUNTY, OHIO                                    | )   |
| Unknown Address,                                              | )   |
|                                                               | )   |
| and                                                           | )   |
|                                                               | )   |
| JOHN DOES 1-10, JANE DOES 1-10,                               | )   |
| DOE PARTNERSHIPS 1-10, DOE                                    | )   |
| CORPORATIONS 1-10, DOE                                        | )   |
| GOVERNMENTAL AGENCIES 1-10 and                                | )   |
| DOE ENTITIES 1-10,                                            | )   |
|                                                               | )   |
| Defendants.                                                   | )   |
|                                                               | )   |
|                                                               | )   |

Now comes, CASSIANNA BELL, Administrator of the Estate of Diane Denise Bell, Plaintiff

herein, by and through her attorneys, Blaise R. Meeker, of Meeker Legal LLC, and Robert C. Meeker

and Ben T. Manayan, Jr., of Blakemore, Meeker & Bowler Co., L.P.A., and hereby amends her

-2-

complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.), against INNER PEACE EVER LIGHT HOME CARE LLC, ESSENTIAL HOUSING LLC, ESSENTIALS NOW LLC, JEANETTE RUFFIN, LASHON WILSON, JAREL WOODEN, DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO, UNKNOWN EMPLOYEES OF DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL AGENCIES 1-10 AND DOE ENTITIES 1-10, names unknown, collectively as Defendants herein, as follows:

A.    PARTIES

1.    During all relevant times herein, Diane Denise Bell, Decedent herein, was a 56-year old individual, residing in Summit County, Ohio, at 1709 Shaw Avenue, Akron, Ohio 44305, and died at said residence on November 15, 2024.

2.    During all relevant times herein, on October 22, 2025, CASSIANNA BELL, Decedent's next of kin and a resident of the Summit County, Ohio, whose address is 803 Rocky Brook Drive, Apt. C, Akron, Ohio 44313, was appointed as the Administrator of the Estate of Diane Denise Bell.  (See Letters of Authority, attached as Exhibit 1)

3.    During all relevant times herein, Defendant INNER PEACE EVER LIGHT HOME CARE LLC ("INPEL"), doing business as INPEL, was, and is, an Ohio for-profit limited liability company, whose address is 345 West Avenue Tallmadge, Ohio 44278.

4.    During all relevant times herein, Defendant ESSENTIAL HOUSING LLC ("Essential Housing") was, and is, an Ohio for-profit limited liability company, whose address is 1342 Easton Drive, Akron, Ohio 44310.

-3-

5.      During all relevant times herein, Defendant ESSENTIALS NOW LLC ("Essentials Now") was, and is, a Nevada for-profit limited liability company, whose address is 10481 Saddle Mountain Street, Las Vegas, Nevada, 89178.

6.      During all relevant times herein, Defendant JEANETTE RUFFIN ("Ruffin") was, and is, a resident of Summit County, Ohio, whose address is 345 West Avenue Tallmadge, Ohio 44278.

7.      Upon information or belief, Defendant LASHON WILSON ("Wilson"), LaShon Denise Wilson, was, and is, a resident of Summit County, Ohio, whose address is unknown.

8.      During all relevant times herein, Defendant JAREL WOODEN ("Wooden"), also known as Jarel M. Wooden, was, and is, a resident of Summit County, Ohio, whose address is 1709 Shaw Avenue, Akron, Ohio 44305.

9.      During all relevant times herein, Defendant DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO ("Summit DD") was, and is, a Summit County, Ohio governmental entity, whose address is 2355 Second Street, Cuyahoga Falls, Ohio 44221.

10.      During all relevant times herein, Defendant UNKNOWN EMPLOYEES OF DEVELOPMENTAL DISABILITIES BOARD, SUMMIT COUNTY, OHIO ("Unknown Employees") were, and are, employees of Defendant Summit DD, whose addresses are unknown.

11.      Plaintiff brings this action against Defendants Summit DD and Unknown Employees and agents of Summit DD, pursuant to Chapter 2744 of the Ohio Revised Code (R.C.).

12.      Plaintiff bring this survival and wrongful death action against Defendants, pursuant to Chapter 2125, Action for Wrongful Death, of the Ohio Revised Code (R.C.).

13.      During all relevant times herein, Defendant Does were, and are, individuals, persons, corporations, partnerships, governmental agencies and entities whose names, identities, capacities,

-4-

activities and/or responsibilities are presently unknown to Plaintiff(s), or his/her/its/their attorney(s), and could not discover said names who in some manner may be liable to Plaintiff(s), contractually, vicariously, tortiously, jointly and/or severally.  Plaintiff(s) will be obtaining updated reports, as to identity, liability, existence of additional claims and/or causes of action or otherwise, in connection with or in addition to the claim or claims herein.  Plaintiff(s) reserve(s) the right to plead Defendant Does as party defendant(s) and/or plead additional claim(s) to this action once their identities, capacities, activities, liabilities and claims or causes of action become known.

B.      PRELIMINARY STATEMENT

14.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

15.     During all relevant times herein, all transactions and occurrences occurred in Summit County, Ohio.

16.     During all relevant times herein, Defendant INPEL maintained and operated a shared living caregiver and resident home business, located at 1709 Shaw Avenue, Akron, Ohio 44305 ("Shared Living Facility").

17.     During all relevant times herein, Defendant Essential Housing owned and/or had an interest in the Shared Living Facility and the services provided in said Share Living Facility.

18.     During all relevant times herein, Defendant Essentials Now owned and/or had an interest in the Shared Living Facility and the services provided in said Shared Living Facility.

19.     During all relevant times herein, Defendant Ruffin owned and/or had an interest in Defendants INPEL, Essential Housing and Essentials Now, including, but not limited to, as a member, managing member, director, officer, representative, agent and/or employee, and the Shared

Living Facility and the services provided in said Shared Living Facility.

20.     During all relevant times herein, Defendant Wilson owned and/or had an interest in Defendants INPEL, Essential Housing and Essentials Now, including, but not limited to, as a member, managing member, director, officer, representative, agent and/or employee, and the Shared Living Facility and the services provided in said Shared Living Facility.

21.     Upon information or belief, Defendants INPEL, Essential Housing, Essentials Now, Ruffin and/or Wilson, collectively as "Caregivers," were in the business of home and health care services, providing health care and housing to individuals with mental impairments and developmental disabilities.

22.     During all relevant times herein, Defendant Wooden was, and is, an individual with mental impairment and developmental disability.

23.     During all relevant times herein, Defendant Summit DD was, and is, a political subdivision and a Service and Support Administrator that develops Individual Service Plans for individuals, such as Defendant Wooden, who are in home and health care facilities, such as the Shared Living Facility owned, maintained and/or operated by Defendant Caregivers.

24.     Upon information or belief, Defendant Summit DD and its employees, representatives and agents investigate home and health care facilities, such as the Shared Living Facility, for the purpose of placing individuals with mental impairments and developmental disabilities in home and health care facilities.

25.     Upon information or belief, Defendant Summit DD certified Defendant Caregivers and Defendant Caregivers' Shared Living Facility, allowing individuals with mental impairments and developmental disabilities to be placed in said Shared Living Facility.

26.     During all relevant times herein, Defendant Wooden was placed in Defendant Caregivers' Shared Living Facility as a resident, where he received home care and treatment provided by Defendant Caregivers.

27.     Upon information or belief, Defendant Summit DD and its employees, representatives and agents, with the cooperation and participation of Defendant Caregivers, developed an Individual Service Plan ("ISP") for Defendant Wooden to be administered by Defendant Caregivers and under the guidance, monitor and oversight of Defendant Summit DD and its employees, representatives and agents.

28.     Further, upon information or belief, as part of developing the ISP, Defendants, collectively, in concert, participation and cooperation, investigated and examined Defendant Wooden's medical condition, including his history and predispositions, prior to being placed at the Shared Living Facility.

29.     In or around August 2024, Defendant Caregivers engaged the services of Decedent as an independent contractor to provide home and care services at Defendant Caregivers' Shared Living Facility.[1]

30.     Among Defendants' duties and responsibilities were, as follows (a non-exhaustive list):

a.      Perform a background check on Defendant Wooden's history.

b.      Perform a background check on Decedent's history.

c.      Provide proper supervision and training to providers, such as Decedent, on home and

---

[1] During an investigation by the Federal Occupational Safety and Health Administration (OSHA), Defendant Caregivers, including Defendants Ruffin and Wilson, admitted that Decedent was a 1099 employee.  Said Defendants' further admitted, via counsel, thus, by imputation, that Decedent was an independent contractor.

care services.

d.      Designate a responsible person(s) to evaluate and assess violence incidents, near misses, and trends.

e.      Develop and implement manuals, policies and safety guidelines for home and care service providers, which include the proper administration of ISPs upon mentally impaired and developmentally disabled individuals, such as Defendant Wooden.

f.      Ensure the creation and implementation of clear policies and procedures on hazard/threat assessments, controls, prevention strategies, shared living caregiver training and education and incident reporting and investigation.

g.      Properly train and supervise all shared living caregivers on the program policies and procedures.

h.      Review plans annually, or more often if needed, and updating it based on the findings from the review.

31.      Upon information or belief, among Decedent's duties and responsibilities at the Shared Living Facility included the following:

a.      Reside at the Shared Living Facility.

b.      Administer the ISP for Defendant Wooden, as developed by Defendants Summit DD and Caregivers.

c.      Perform her duties and responsibilities between the hours of 6:00 a.m. and 8:00 a.m.

32.      Upon information or belief, Defendant Caregivers' duties and responsibilities were, as follows:

a.      Provide Decedent room and board at the Shared Living Facility.

b.      Provide a stipend for Decedent's services.

c.      Provide clear policies and procedures on hazard/threat assessments, controls, prevention strategies, shared living caregiver training and education and incident reporting and investigation.

d.      Provide proper training, including safety training, to Decedent, regarding care of Defendant Wooden and administration of the ISP to Defendant Wooden.

e.      Provide proper supervision of Decedent, regarding care of Defendant Wooden and administration of the ISP to Defendant Wooden.

33.     On November 15, 2024, for unbeknownst reason, Defendant Wooden became agitated.  In the course of that agitation, an altercation ensued between Decedent and Defendant Wooden.  During that altercation, Defendant Wooden grabbed Decedent in the arm and pushed her from the kitchen sink to and against the wall.

34.     Decedent immediately called 911 requesting for help, describing the events and Defendant Wooden's conduct to dispatch and stating that Defendant Wooden be taken to jail.

35.     A few minutes after the 911 call, police arrived at the Shared Living Facility.  The police found Decedent fatally stabbed in the neck.

36.     Upon information or belief, all work hours at the Shared Living Facility end at 4:30 p.m.

37.     Upon information or belief, the altercation and Decedent's death occurred in the evening hours of November 15, 2024, when she was "off the clock," well after her scheduled hours for work.

D.      CAUSES OF ACTION

-9-

## Count One
### [Premises Liability]

38.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

39.     During all relevant times herein, Decedent was a business invitee of Defendant Caregivers at the Shared Living Facility.

40.     During all relevant times, Defendant Caregivers required the Decedent to reside at the Shared Living Facility in rendering her services at the Shared Living Facility.

41.     As landowners, interest holders and/or occupiers of the Shared Living Facility, Defendant Caregivers owed a legal duty and/or heightened duty of ordinary care to maintain the premises safe for its business invitees, such as Decedent, and keep them safe from harm.

42.     To perform their duty of ordinary care, Defendant Caregivers were required to maintain the premises safe from violent individuals, who resided at the Shared Living Facility, including Defendant Wooden.

43.     Further, Defendant Caregivers had a duty to investigate the background of such individuals, including Defendant Wooden, before placing them in the Shared Living Facility.

44.     Defendant Caregivers knew that Defendant Wooden was mentally impaired and developmentally disabled.

45.     Defendant Caregivers knew, or should have known, that Defendant Wooden was predisposed to violence.

46.     Had Defendant Caregivers properly conducted their investigation of Defendant Wooden, such investigation would have revealed the following events, involving Defendant

-10-

Wooden:

    a.    In April 2011, Defendant Wooden threw household items at four victims in a residence owned by one of the victims and wished everyone dead.  After doing so, Defendant Wooden chased the victims out of the home with a steak knife.  While outside, Defendant Wooden threw the knife at one of the victims, who was carrying another victim.  Defendant was subsequently convicted in the Akron Municipal Court, Case No. 11 CR03190, of Domestic Violence and Endangering Children.

    b.    In January 2012, the police were summoned to Defendant Wooden's residence on Fulton Street for yelling and throwing items down the stairs.  Upon arrival, the police discovered Defendant Wooden with a steak knife in his throat, and thereafter Defendant wooden approached the police officers causing the use of a Taser Electronic Control Device on Defendant Wooden.

    c.    In December 2012, Defendant Wooden was a passenger in a vehicle owned by the victim.  While in transit, he grabbed the steering wheel causing the vehicle to hit a curb.  Subsequently, Defendant Wooden became violent, again, and told the victim he was going to kill her.

    d.    In 2007, Defendant Wooden testified at his brother's Summit County murder trial of an 18-month-old child, and when asked whether he was the one who had hurt the child he replied "Yes, I did[,]" and "I pushed him and made him bang his head."

    e.    On September 24, 2024, there was an altercation with Defendant Wooden and Decedent at the Shared Living Facility causing 911 to be called and the Akron Police Department to respond to the Shared Living Facility.

f.     On September 26, 2024, there was an altercation with Defendant Wooden and Decedent at the Shared Living Facility causing 911 to be called and the Akron Police Department to respond to the Shared Living Facility.  The responding officers informed Defendant Wooden that he would need to contact the staffing agency with complaints of staff.

47.     Defendants knew, or should have known, of Defendant Wooden's violent predisposition.

48.     Defendant Caregivers knew, or should have known, that placing Defendant Wooden and requiring Decedent to reside at the Shared Living Facility, without proper safety measures, would, and, in this case, did, cause Decedent to sustain great bodily harm, which resulted in her death.

49.     As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**Count Two**
**[Promissory Estoppel/Failure to Train and Supervise**
**and/or Negligent Training andSupervision]**

50.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

51.     Defendant Caregivers engaged the services of the Decedent.

52.     Defendants Wilson and/or Ruffin were/was the employees, agents and/or principals of Defendants INPEL, Essential Housing and/or Essentials Now.

53.     As part of their duties and responsibilities, Defendants, including Defendants Wilson

-12-

and/or Ruffin, engaged the services of and trained and supervised caregivers to administer ISPs and attend to the needs of mentally impaired and developmentally disabled individuals residing at the Shared Living Facility.

54.    Defendant Caregivers, including Defendants Wilson and Ruffin, knew, or should have known, of Defendant Wooden's violent propensities and criminal history.

55.    Defendant Caregivers, including Defendants Wilson and Ruffin, knew, or should have known, of the recent altercations between Defendant Wooden and the Decedent, requiring police intervention at the Shared Living Facility.

56.    Defendant Caregivers, including Defendants Wilson and Ruffin, knew, or should have known, of Decedent's lack of experience, training or knowledge in rendering caregiving services and administering ISPs to mentally impaired and developmentally disabled individuals, such as Defendant Wooden.

57.    Defendant Caregivers, including Defendants Wilson and Ruffin, knew, or should have known, that Decedent was homeless and had a history of drug use, prior to her engagement of her services.

58.    As part of their engagement of Decedent's services, Defendant Caregivers, including Defendants Wilson and Ruffin, promised Decedent that she would be properly trained and supervised in rendering caregiving services and administering ISPs to mentally impaired and developmentally disabled individuals, including Defendant Wooden.

59.    Defendants Caregivers, including Defendants Wilson and/or Ruffin, failed to train and supervise the Decedent in rendering caregiving services and administering IPS.

60.    Further, if such training and supervision were performed, Defendant Caregivers,

-13-

including Defendants Wilson and/or Ruffin, failed to properly train and supervise Decedent in rendering caregiving services and administering IPS.

61.     On November 15, 2024, Defendant Caregivers', including Defendants Wilson and/or Ruffin's, failure to train and supervise, and/or negligent training and supervision of, the Decedent directly and proximately caused Decedent to suffer great bodily harm from Defendant Wooden's actions, which resulted in her death.

62.     As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**Count Three**
**[Respondeat Superior/Vicarious Liability]**

63.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

64.     During all relevant times herein, Defendants INPEL, Essential Housing and Essentials Now maintained and employment and/or agency relationship with Defendants Ruffin and Wilson.

65.     In the course of their relationship, Defendants Ruffin and Wilson performed their duties and responsibilities in the course and scope of their employment and/or agency with Defendants INPEL, Essential Housing and Essentials Now.

66.     Under the theory of respondeat superior, Defendants Ruffin's and Wilson's acts and omissions were the acts and omissions of, and/or were imputed to, Defendants INPEL, Essential Housing and Essentials Now.

67.     As such, Defendants INPEL, Essential Housing and Essentials Now are vicariously

-14-

liable to Plaintiff for said acts and omissions.

68.     As a result, Defendants INPEL, Essential Housing and Essentials Now are liable for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

### Count Four
### [R.C. Chapter 2744, Negligence]

69.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

70.     Upon information or belief, Defendants Summit DD and Unknown Employees, investigated and certified the fitness for occupancy of the Shared Living Facility.

71.     Upon information or belief, Defendant Summit DD pays Defendant Caregivers, including Defendants Ruffin and Wilson, for the use and occupancy of the Shared Living Facility by disabled individuals, such as Defendant Wooden.

72.     Defendant Summit DD and Unknown Employees, with the cooperation of Defendant Caregivers, including Defendants Ruffin and Wilson, developed the ISP for Defendant Wooden.

73.     Upon information or belief, Defendants Summit DD and Unknown Employees had the duty to develop safety guidelines and procedures, regarding the management and operation of the Shared Living Facility.

74.     Upon information or belief, Defendants Summit DD and Unknown Employees had the duty to develop safety guidelines and procedures, regarding the implementation and administration of the ISP to Defendant Wooden.

75.     Upon information or belief, Defendants Summit DD and Unknown Employees had

the duty to oversee and monitor Defendant Caregivers, including Defendants Ruffin and Wilson, in the implementation and administration of the ISP to Defendant Wooden.

76.     Upon information or belief, Defendants Summit DD and Unknown Employees failed to develop said guidelines and procedures, which resulted in great bodily harm to Decedent, when Defendant Wooden fatally stabbed Decedent in the neck.

77.     Further, upon information or belief, Defendant Unknown Employees failed to monitor and supervise Defendant Caregivers, including Defendants Ruffin and Wilson, and Decedent in the implementation and administration of the ISP to Defendant Wooden, despite having knowledge or awareness of Defendant Wooden's violent disposition, criminal history and Decedent's lack of training, supervision and experience.  As such, Defendant Unknown Employees' acts and omissions were malicious, in bad faith and wanton or reckless.

78.     As a result, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

<div align="center">

**Count Five**
**[Civil Rights Violation, 42 U.S.C. §1983, Summit DD]**

</div>

79.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

80.     Title 42 U.S.C., Section 1983, Civil action for deprivation of rights, of the United States Code (U.S.C.), states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

<div align="center">

-16-

</div>

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

81.     The Fourth Amendment to the United States Constitution states, in relevant part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

82.     The Fourteenth Amendment to the United States Constitution states, in relevant part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"

83.     During all relevant times herein, Defendant Summit DD, including its employees and agents, was acting under color of state law in its duties and responsibilities in investigating and certifying home care facilities, such as the Shared Living Facility, for the placement of disabled individuals, such as Defendant Wooden.

84.     During all relevant times herein, Defendant Summit DD was acting under color of state law in its duties and responsibilities in investigating disabled individuals, such Defendant Wooden, for placement in home care facilities, such as the Share Living Facility; after such investigation, Defendant Summit DD placed Defendant Wooden in Defendant Caregivers' Share Living Facility.

85.     During all relevant times herein, Defendant Summit DD was acting under color of state law in its duties and responsibilities in developing ISPs, with the cooperation and participation of home caregivers, such as Defendant Caregivers, to be implemented by said home caregivers to, and for the benefit of, disabled individuals, such as Defendant Wooden.

86.     During all relevant times herein, Defendant Summit DD was acting under color of state law in its duties and responsibilities in developing safety policies and procedures for the staff

members of Defendant Caregivers, such as Defendants Ruffin and Wilson, as well as Decedent.

87.     During all relevant times herein, Defendant Summit DD was acting under color of state law in their duties and responsibilities in investigating and certifying home care facilities and their staff members, such as Defendants Ruffin and Wilson, for their qualification and fitness to manage and operate a home care facility.

88.     For example, among the duties and responsibilities to be performed by Defendant Summit DD in its investigation and certification of home care facilities, and staff members thereof, such as Defendants Ruffin and Wilson, included, but not limited to, the following:

a.      Develop and implement a written workplace violence ("WPV") prevention program that is specific to the conditions and hazards of working and residing in a shared living home.

b.      Designate a responsible person(s) to evaluate and assess WPV incidents, near misses, and trends.

c.      Ensure clear policies and procedures on hazard/threat assessments, controls, prevention strategies, training and education of home care facility staff members and incident reporting and investigation by said staff members.

d.      Train all home care facility staff members on the program policies and procedures.

e.      Review the plan annually, or more often if needed, updating it based on the findings from the review.

f.      Develop and implement specific written procedures for home care facility staff members to take when encountering or responding to an incident of workplace violence.  Describe the specific circumstances and what response should be initiated.

-18-

g.   Train home care facility staff members on the specific procedures to ensure everyone understands their roles and responsibilities (e.g., familiarize said caregivers with and reinforce proper procedures by implementing drills).

h.   Develop and implement post-incident policies and procedures to ensure they are assessed for injuries if there are any during a WPV incident.  Ensure home care facility staff members are trained on these policies and procedures.

i.   Provide home care facility staff members with training, education and understanding of the Individual Service Plan (ISP).

89.   In this case, Defendant Summit DD failed to provide written safety policies and procedures, regarding the management and operation of the Shared Living Facility.

90.   Defendant Summit DD failed to provide written safety policies and procedures, regarding the handling of Defendant Wooden, who was predisposed to violence.

91.   Defendant Summit DD knew, or should have known, of Defendant Wooden's predisposition to violence had it conducted due investigation.

92.   Defendant Summit DD failed to provide training and supervision of Defendant Caregivers, including Defendant Ruffin and Wilson, on safety policies and procedures in the management and operation of the Shared Living Facility.

93.   Defendant Summit DD failed to provide training and supervision of Defendant Caregivers, including Defendant Ruffin and Wilson, on safety policies and procedures, regarding handling of Defendant Wooden, who was predisposed to violence.

94.   Defendant Summit DD knew of Decedent's well-established right against unreasonable seizure, to be free of threats and violence to her person and to be secured in her home,

-19-

as guaranteed by the Fourth Amendment.

95. Defendant Summit DD knew of Decedent's well-established right not to be deprived of life and liberty without due process of law, as guaranteed by the Fourteenth Amendment.

96. Defendant Summit DD knew, or should have known, that its failure to provide written safety policies and procedures and the training thereof would, and, in this case, did, cause constitutional injuries to Decedent; as such, Defendant Summit DD's acts and omissions were reckless, intentional, wanton and malicious, with deliberate indifference to the constitutional rights of Decedent.

97. Defendant Summit DD's adopted, ratified, condoned, encouraged and set in force in motion an unwritten policy or custom that allowed Defendant Caregivers, including Defendants Ruffin and Wilson, as well as Decedent, to implement the ISP to Defendant Wooden without proper guidance, training and supervision; such acts and omissions directly caused the death of Decedent.

98. As a result of Defendant Summit DD's acts and omissions, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**Count Six**
**[Civil Rights Violation, 42 U.S.C. §1983, Caregivers,**
**including Jeanette Ruffin, Lashon Wilson]**

99. Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

100. During all relevant times herein, Defendant Caregivers were in the business of owning, managing, maintaining and operating home care facilities, such as the Shared Living Facility.

101. During all relevant times herein, Defendant Caregivers, including Defendants Ruffin and Wilson, were cooperating with Defendant Summit DD in the creation and development of ISPs for disabled individuals, such as Defendant Wooden; thus, Defendant Caregivers, including Defendants Ruffin and Wilson, were acting under color of state law.

102. During all relevant times herein, Defendant Caregivers, including Defendants Ruffin and Wilson, were acting under color of state law in their implementation of said ISPs to, and for the benefit of, disabled individuals, such as Defendant Wooden.

103. During all relevant times herein, Defendant Caregivers, including Defendants Ruffin and Wilson, had a duty conduct due investigation of Defendant Wooden, relating to his placement at the Shared Living Facility.

104. During all relevant times herein, Defendant Caregivers were acting under color of state law in their duties and responsibilities in developing safety policies and procedures for their staff members, including Defendants Ruffin and Wilson.

105. During all relevant times herein, Defendant Caregivers were acting under color of state law in their duties and responsibilities in seeking certification of their Shared Living Facility for the purpose of implementing the ISPs for disabled individuals, such as Defendant Wooden.

106. As part of Defendant Caregivers' management and operation of the Shared Living Facility, among their duties and responsibilities, included, but not limited to, the following:

a. Develop and implement a written workplace violence ("WPV") prevention program that is specific to the conditions and hazards of working and residing in a shared living home.

b. Designate a responsible person(s) to evaluate and assess WPV incidents, near misses,

and trends.

c.  Ensure clear policies and procedures on hazard/threat assessments, controls, prevention strategies, training and education of home care facility staff members and incident reporting and investigation by said staff members.

d.  Train all home care facility staff members, including Defendants Ruffin and Wilson, as well as Decedent, on the program policies and procedures.

e.  Review the plan annually, or more often if needed, updating it based on the findings from the review.

f.  Develop and implement specific written procedures for home care facility staff members, including Defendants Ruffin and Wilson, as well as Decedent, to take when encountering or responding to an incident of workplace violence.  Describe the specific circumstances and what response should be initiated.

g.  Train home care facility staff members, including Defendants Ruffin and Wilson, as well as Decedent, on the specific procedures to ensure everyone understands their roles and responsibilities (e.g., familiarize said caregivers with and reinforce proper procedures by implementing drills).

h.  Develop and implement post-incident policies and procedures to ensure they are assessed for injuries if there are any during a WPV incident.  Ensure home care facility staff members, including Defendants Ruffin and Wilson, as well as Decedent, are trained on these policies and procedures.

i.  Provide home care facility staff members, including Defendants Ruffin and Wilson, as well as Decedent, with training, education and understanding of the Individual

-22-

Service Plan (ISP).

107.     In this case, Defendant Caregivers, including Defendants Ruffin and Wilson, knew, or were aware, that Decedent was homeless and had used drugs.

108.     Defendant Caregivers, including Defendants Ruffin and Wilson, knew, or were aware, that Decedent lacked the education, skill or experience in caring for disabled individuals, such as Defendant Wooden.

109.     Defendant Caregivers, including Defendants Ruffin and Wilson, engaged the services of Decedent as an independent contractor, with the promised that she would be trained and supervised in the care of disabled individuals.

110.     Decedent relied on Defendant Caregivers' promise that she would be trained and supervised in discharging to care for disabled individuals, such as Defendant Wooden.

111.     Decedent was assigned to perform her duties between the hours of 6:00 a.m. and 8:00 a.m.

112.     Upon information or belief, for compensation, Decedent was provided with a stipend and room and board, allowing her to live at the Share Living Facility.

113.     Defendant Caregivers failed to create and provide written safety policies and procedures, regarding the management and operation of the Shared Living Facility.

114.     Defendant Caregivers failed to provide written safety policies and procedures, regarding the handling of Defendant Wooden.

115.     Defendant Caregivers, including Defendants Ruffin and Wilson, knew or should have known Defendant Wooden was predisposed to violence had they conducted due investigation.

116.     Defendant Caregivers, including Defendant Ruffin and Wilson, failed to provide

training and supervision to Decedent on safety policies and procedures for the care of disabled individuals, such as Defendant Wooden, at the Shared Living Facility.

117.    Defendant Caregivers, including Defendants Ruffin and Wilson, knew of Decedent's well-established right against unreasonable seizure, to be free of threats and violence to her person and to be secured in her home, as guaranteed by the Fourth Amendment.

118.    Defendant Caregivers, including Defendants Ruffin and Wilson, knew of Decedent's well-established right not to be deprived of life and liberty without due process of law, as guaranteed by the Fourteenth Amendment.

119.    Defendant Caregivers, including Defendants Ruffin and Wilson, knew, or should have known, that they're failure to provide written safety policies and procedures and the training thereof would, and, in this case, did, cause constitutional injuries to Decedent; as such, Defendant Caregivers', including Defendant Ruffin and Wilson's, acts and omissions were reckless, intentional, wanton and malicious, with deliberate indifference to the constitutional rights of Decedent.

120.    Defendant Caregivers, including Defendants Ruffin and Wilson, adopted, ratified, condoned, encouraged and set in force in motion an unwritten policy or custom that allowed Decedent to perform her duties without proper guidance, training and supervision; such acts and omissions directly caused the death of Decedent.

121.    As a result of Defendant Caregivers', including Defendant Ruffin and Wilson's, acts and omissions, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

**Count Seven**

-24-

**[Assault]**

122.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

123.     Defendant Wooden threatened to cause bodily to Decedent, when he grabbed her arm and pushed her against the wall.

124.     Decedent was in fear of said threat, causing her to call 911.

125.     Defendant Wooden threatened to cause bodily to Decedent, when he approached her and stabbed her in the neck.

126.     In committing said acts, Defendant Wooden intended to cause great bodily harm to Decedent as he pushed her against the wall and eventually stabbing her in the neck.

127.     As a result of Defendant Wooden's conduct, Plaintiff suffered damages for Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

## Count Eight
**[Battery]**

128.     Plaintiff(s) repeat(s) and re-aver(s) the allegations contained in the preceding paragraphs, as appropriate, as if fully set forth herein.

129.     Defendant Wooden intended to grab Decedent's arm and push her against the wall, which were offensive and unpermitted.

130.     Defendant Wooden further intended to stab Decedent in the neck, causing her to suffer great bodily harm, which resulted in her death.

131.     As a result of Defendant Wooden's conduct, Plaintiff suffered damages for

Decedent's pain and suffering, in excess of $25,000.00, and damages for Decedent's wrongful death, in excess of $25,000.00, the true amounts of which shall be proven in court.

WHEREFORE, Plaintiff(s) pray(s) for judgment against Defendant(s), as follows:

A.     That, as to Count One, the Court grants relief and damages in favor of Plaintiff against Defendant Caregivers in excess of $25,000.00, as to each Defendant;

B.     That, as to Count Two, the Court grants relief and damages in favor of Plaintiff against Defendant Caregivers, including Defendants Ruffin and Wilson, in excess of $25,000.00, as to each Defendant;

C.     That, as to Count Three, the Court grants relief and damages in favor of Plaintiff against Defendants Caregivers, including Defendants Ruffin and Wilson, in excess of $25,000.00, as to each Defendant;

D.     That, as to Count Four, the Court grants relief and damages in favor of Plaintiff against Defendant Summit DD and Unknown Employees in excess of $25,000.00, as to each Defendant;

E.     That, as to Count Five, the Court grants relief and damages in favor of Plaintiff against Defendants Summit DD in excess of $25,000.00;

F.     That, as to Count Six, the Court grants relief and damages in favor of Plaintiff against Defendant Caregivers, including Defendants Ruffin and Wilson, in excess of $25,000.00, as to each Defendant;

G.     That, as to Count Seven, the Court grants relief and damages in favor of Plaintiff against Defendant Wooden in excess of $25,000.00;

H.     That, as to Count Eight, the Court grants relief and damages in favor of Plaintiff

against Defendant Wooden in excess of $25,000.00;

      I.     The Court finds Defendants jointly and/or severally liable to Plaintiff;

      J.     That the Court grants to Plaintiffs against Defendants punitive and/or exemplary damages for Defendants' malicious, willful and/or wanton conduct;

      K.     That the Court grants relief and damages in favor of Plaintiff against Defendants interest, losses, further damages and all of Plaintiffs' court costs, expenses and reasonable attorney fees; and

      L.     That the Court grants relief and damages as the Court deems reasonable and proper in the premises.

Dated: Akron, Ohio, February 28, 2026.

Respectfully submitted,

*/s/ Balise R. Meeker*
BLAISE R. MEEKER (#0093050)
Meeker Legal LLC
3580 South Arlington Road
Akron, Ohio 44312
blaise@meekerlegal.com

*/s/ Ben T. Manayan, Jr.*
ROBERT C. MEEKER (#0013019)
BEN T. MANAYAN, JR. (Hi. Bar #5692)
Blakemore, Meeker & Bowler Co., L.P.A.
495 Portage Lakes Drive
Akron, Ohio 44319
330-253-3337 [voice]
330-253-4131 [facsimile]
rcmeeker@bmblaw.com
btmj@bmblaw.com

Attorneys for Plaintiff
CASSIANNA BELL, Administrator of the
Estate of Diane Denise Bell

-27-

<u>JURY DEMAND ENDORSED HEREON</u>

Now come(s), Plaintiff(s), by and through his/her/its/their attorneys,  Blaise R. Meeker, of Meeker Legal LLC, and Robert C. Meeker and Ben T. Manayan, Jr., of Blakemore, Meeker & Bowler Co., L.P.A., and hereby demand(s) a trial by jury of all facts and issues so triable in this action.

Dated: Akron, Ohio, February 28, 2026.

<div style="margin-left:50%">

Respectfully submitted,

<u>*/s/ Balise R. Meeker*</u>
BLAISE R. MEEKER (#0093050)
Meeker Legal LLC
3580 South Arlington Road
Akron, Ohio 44312
blaise@meekerlegal.com

<u>*/s/ Ben T. Manayan, Jr.*</u>
ROBERT C. MEEKER (#0013019)
BEN T. MANAYAN, JR. (Hi. Bar #5692)
Blakemore, Meeker & Bowler Co., L.P.A.
495 Portage Lakes Drive
Akron, Ohio 44319
330-253-3337 [voice]
330-253-4131 [facsimile]
rcmeeker@bmblaw.com
btmj@bmblaw.com

Attorneys for Plaintiff
CASSIANNA BELL, Administrator of the
Estate of Diane Denise Bell

</div>

-28-

<u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the document(s) attached hereto was/were filed electronically on or about the date indicated below.  Notice and service of this filing will be sent by and through the operation of the Court's electronic filing system to all parties participating in the Court's electronic filing system.  Parties may access a copy of this filing through the Court's system.

Dated:  Akron, Ohio, February 28, 2026.

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Balise R. Meeker*
BLAISE R. MEEKER (#0093050)
Meeker Legal LLC
3580 South Arlington Road
Akron, Ohio 44312
blaise@meekerlegal.com

*/s/ Ben T. Manayan, Jr.*
ROBERT C. MEEKER (#0013019)
BEN T. MANAYAN, JR. (Hi. Bar #5692)
Blakemore, Meeker & Bowler Co., L.P.A.
495 Portage Lakes Drive
Akron, Ohio 44319
330-253-3337 [voice]
330-253-4131 [facsimile]
rcmeeker@bmblaw.com
btmj@bmblaw.com

Attorneys for Plaintiff
CASSIANNA BELL, Administrator of the
Estate of Diane Denise Bell

</div>